. 53    21
d73   107

## E. BLOOM *v.* THOMAS E. HELM, PRESIDENT, ETC.

1. PARTNERSHIP. *Bills of exchange. Accommodation acceptance. Holder with notice.*
   An accommodation acceptance by one member of a firm, in the partnership name, without the authority or consent of his copartner, is not binding on the latter, in the hands of a holder, who took it with notice that it was purely an accommodation acceptance, and not given in furtherance of the business of the firm, but for the private use of a stranger, the drawer of the bill.

2. SAME. *Power of partner to bind firm. Partnership articles.*
   Each member of a mercantile partnership may draw and accept bills of exchange in relation to and in furtherance of the partnership business; and although the partnership articles prohibit either member to draw or accept bills, this in no wise affects the public, except as it has notice of it; for the mere formation and existence of the partnership is the communication of power to each member to transact the business of the firm, and bind each partner accordingly.

3. SAME. *Implied powers of partner. How far persons dealing with firm are put on inquiry.*
   Persons dealing with a partnership are required to look only to the character of the business in which they are engaged, to ascertain the extent of authority which is imparted to each member to deal for all. No inquiry is enjoined by the law respecting their private agreement, as the source of the authority, or for its limitation.

4. SAME.  *Firm paper purchased in the market in due course of business.*

If an acceptance by one partner in the firm name is taken in due course of business, for value, in the market, without notice, the partnership is bound, although the firm name has been used for the accommodation of the drawer, without the knowledge or consent of the other partners.

5. PARTNERSHIP.  *Accommodation acceptance.  Notice.  Taking the paper out of the usual course of business.*

The fact that the drawer presents the draft to the payee, with the acceptance of the drawees on it, is out of the usual course of business, and a circumstance indicating to the payee the accommodation character of the acceptance.

6. SAME.  *Circumstances sufficient to put one on inquiry.  Case in judgment.*

G. applied to H. for a loan of $300, and proposed to give the acceptance of B. & B. for it.  H. assented, and wrote a draft on B. & B. in his own favor for the amount, which G. signed as drawer.  G. took away the draft, and immediately returned with the acceptance of B. & B. upon it, when H. handed him the $300, and took the acceptance, believing at the time, from the foregoing facts, that the money was for G.'s private use, and not for the benefit of B. & B.  *Held*, in a suit by H. on the acceptance, in which it appeared that it was the unauthorized act of one partner for the accommodation of G., that the facts were sufficient to have put H. on inquiry as to the character of the acceptance, and that the non-consenting partner was not bound thereby.

7. SPECIAL FINDING OF FACTS UNDER § 650, CODE 1871.  *Need not be on minutes of court.  May be on bill of exceptions.*

Under § 650, Code 1871, where the conclusions by the judge of fact and law are requested by either party, it is not necessary to place the findings on the minutes, but they may be brought to the notice of the Supreme Court by bill of exceptions.

8. SAME.  *Must be as full as a special verdict.*

The conclusions of fact intended by § 650, Code 1871, must be as full as a special verdict of a jury, and must embrace every thing left open to evidence, and not admitted by the pleadings, so that final judgment may be pronounced on the facts found.

9. SAME.  *Must find every fact put in issue by the pleadings.*

Where the conclusions of fact omit to find any fact put in issue by the pleadings in the case, the finding is not full enough under the statute.

10. SAME.  *Special finding must not state the evidence.*

The judge must not state in his conclusions the evidence on either side, but the facts proved alone must be stated.

Error to the Circuit Court of Hinds County.

Hon. S. S. Calhoon, Judge.

This was an action of assumpsit, by Thomas E. Helm, president of the Capitol State Bank, against E. Bloom and James H. Boyd, partners under the firm name of Bloom & Boyd, on an acceptance in the partnership name of a bill of exchange, drawn by L. C. Gunn, on the firm of Bloom & Boyd, in favor of Thomas E. Helm, president, &c., for $300. The bill of exchange and acceptance is set out in full in the opinion of the court. The bankruptcy of Boyd having been suggested, and the suit revived against his assignee, who made no defence, the case proceeded against Bloom, who alone defended.

Bloom pleaded *non assumpsit*, with an affidavit that he did not accept the bill of exchange sued on, but it was accepted by Boyd without authority; and a notice, that his proof would show that the acceptance was made, without authority, by Boyd, for the accommodation of Gunn, and was outside the scope of the partnership business, and that Helm took it with notice. The plaintiff filed a counter notice, that he would prove he took it in due course of trade, for valuable consideration, without notice.

A jury was waived, and the case submitted to the court, under § 649, Code 1871. The court found for the plaintiff, and at the request of the defendant, under § 650, Code 1871, made a separate finding of facts and law. The defendant excepted to the finding of the court on the question of law involved. The defendant moved for a new trial, under § 651, Code 1871, which motion was by the court overruled. The defendant excepted, and filed his bill of exceptions, which was signed and sealed by the judge, and, by an entry in the order overruling the motion for a new trial, ordered to be made part of the record of the case. This bill of exceptions contains the evidence in the case, and the special findings, as follows : —

The plaintiff opened the case by introducing the bill of exchange, with the acceptance on it, and rested. The defendant, Bloom, then took up the case, and proved that, in June, 1873, when the acceptance was made, the extent of the business of Bloom & Boyd was furniture dealers and auctioneers, and making sales on commission, and, by the partnership articles,

neither partner had authority to accept bills; that Bloom was applied to by Gunn to accept the draft, and refused; that Gunn had no claim on the firm of Bloom & Boyd, that they owed him nothing, and had no property of his; that the acceptance never went on the books of Bloom & Boyd as one of the liabilities of the firm, and although the firm was dissolved in August, 1873, and notice thereof put in the newspapers, the acceptance was never presented to Bloom for payment until ten months after the dissolution, nine months after it was due; that Bloom did not know until such presentation that the acceptance had been given. Here the defendant Bloom rested his case.

The plaintiff took up the case, and introduced Thomas E. Helm, the plaintiff, who testified, —

" On June 28, 1873, L. C. Gunn came into the Capitol State Bank, of which I was and still am the president, and told me he had a chance by which, if he had a little money, he could get into a good business, and asked me if I would let him have $300, on the acceptance of Bloom & Boyd. I knew Bloom to be good, and told him I would let him have the money on the acceptance of Bloom & Boyd, and I wrote out the draft as it now appears on a Capitol State Bank blank, directing it to Bloom & Boyd, and Gunn signed it. Every thing was on it then which is on it now, except the acceptance of Bloom & Boyd on its face. Gunn took it, and went off with it. He soon came back with the acceptance on it, as it now appears in this suit. I was not acquainted with the handwriting of Bloom or Boyd, and I did not know which had signed the acceptance. Gunn was alone when he came back with the acceptance, and I paid him the money on it. I did not see either Bloom or Boyd in reference to the transaction. I did not know at the time of the acceptance that Gunn wanted the money for the Express Company, but I did believe that he was getting it for his own private uses, and not for the benefit of Bloom & Boyd, or their business. I believed it to be for his uses, because of his previous conversation with me, and because the draft was drawn by him and accepted by Bloom & Boyd, and he got the money."

The plaintiff further proved that the acceptance was signed by James H. Boyd, on Gunn, who was Boyd's son-in-law, representing to Boyd that Bloom authorized him to do so.

L. C. Gunn, whose deposition was read, testified that Bloom

did authorize him to tell Boyd to accept the draft in the partnership name. On cross-examination, he stated he got the money to relieve himself from embarrassment with the Express Company.

Then follow the findings, in these words:—

" The conclusions of fact arrived at by the court from all the testimony were these:—

" Accommodation acceptances were not, as to the partners, within the scope of their powers; but the partnership of Bloom & Boyd was a general one, as to the furniture business, so far as third parties without notice were concerned. Bloom did not authorize or consent to the acceptance, and Gunn deceived Boyd, Bloom, and the bank. Helm cashed the acceptance in good faith. No credit was given to Gunn's deposition, because of its internal defects, and its inconsistency with the evidence of Bloom, and the proof of his deceit to Boyd. Helm believed, when he cashed the acceptance, that it was for Gunn's private use, and was purely an accommodation acceptance by Bloom & Boyd, and not given in furtherance of their business; but he did not know which partner signed it; thought it was *bona fide* the acceptance of the firm, and cashed it without suspicion of the disaffection or want of privity in fact of either partner."

" The conclusion of law by the court, upon the whole case, was:

" That making bills of exchange pertained to the business of Bloom & Boyd, as to third parties without notice; that the circumstances were not so suspicious as to put Helm on inquiry, and the court found for the plaintiff; to which conclusions of law and fact by the court the defendant then and there excepted."

Then follows in the bill of exceptions the motion for a new trial, and the bill of exceptions concludes:—

" Which motion the court, after argument, overruled. To which action of the court in overruling said motion for a new trial the defendant excepted, and then and there instantly tendered this his bill of exceptions, and asked that the same may be made part of the record, and the same is thereupon ordered and done.

" S. S. CALHOON, *Judge*." [Seal.]

*Frank Johnston* and *J. A. Brown*, for the plaintiff in error, each argued the case orally, and they filed the following brief: —

1. On the special finding of facts, it was error to give judgment for the plaintiff, because the court finds as facts that Helm believed, when he cashed the acceptance, that it was purely an accommodation acceptance on the part of Bloom & Boyd, and that Bloom never authorized it, or consented to it; and it is the law that the non-consenting partner is not bound by an acceptance in the firm name, in the hands of a holder, who took it with notice that it was an accommodation acceptance. *Catskill Bank* v. *Stahl,* 18 Wend. 477, 478; *King* v. *Faber,* 22 Penn. St. 21; *New York Fire Ins. Co.* v. *Bennett,* 5 Conn. 576; *Sweetser* v. *French,* 2 Cush. 309; *Darling* v. *March,* 22 Me. 184; *Hendrie* v. *Berkowitz,* 37 Cal. 113; *Bank of Tennessee* v. *Saffarrans,* 3 Humph. 597.

2. The evidence justified the special finding of facts. The fact that the drawer had the draft in his hands, with the acceptance upon it, gave notice of its accommodation character, because out of the usual course of business; *Bank of Vergennes* v. *Cameron,* 7 Barb. 143; *Cooper* v. *McClurkan,* 22 Penn. St. 80; while the facts that the draft was not a pre-existing security in the hands of Gunn, but was drawn up and written by Helm for the precise amount of the loan to Gunn, and for the express purpose of obtaining the loan, show that Helm did have actual notice of its character. Had Helm believed that Bloom & Boyd were under pecuniary obligation to Gunn, to the amount of the draft, he would not have required Gunn to procure their acceptance on it before he advanced the money to him. *Joyce* v. *Williams,* 14 Wend. 141–145; *Bank of Rochester* v. *Bowen,* 7 Wend. 158.

3. Having reversed the judgment, this court should enter a judgment for the defendant on the special finding of facts. No damages are to be assessed, or fact to be ascertained, and the matter to be determined is certain. Code 1871, § 413. The finding of facts is accurate, full, and complete. It is not the evidence, but the facts proved by the evidence. *Seward* v. *Jackson,* 8 Cowen, 406, 424, note *a.* It contains the essence of all the testimony of every witness. 2 Tidd's Practice,

897. It finds, not the facts admitted by the pleadings, but finds every fact in issue. *Carlisle* v. *Mulhern*, 19 Mo. 57, 58; *Bank of Sturgis* v. *Peck*, 8 Webb, 661; *Hawker* v. *Ins. Co.*, 11 Wis. 191. The finding is formal and regular, under Code 1871, §§ 649–651. The request was made, the exception is of record, and the bill of exceptions is the proper means of making the finding a part of the record, and certifying it to this court, for review of the decision on the question of law involved. *Button* v. *Ferguson*, 11 Ind. 315; *Peoria Ins. Co.* v. *Walser*, 22 Ind. 73; *McQuillan* v. *Donahue*, 49 Cal. 157. Under statutes similar to ours it is uniformly held that a special finding of facts is like the special verdict of a jury, on which the Supreme Court, after reversing the erroneous judgment, will enter up the proper one. *Trudo* v. *Anderson*, 10 Mich. 358–370; *Wood* v. *La Rue*, 9 Mich. 159; *French* v. *Edwards*, 21 Wall. 147–151; *Hudson* v. *Guestier*, 6 Cranch, 285, by Chief Justice Marshall; *Plummer* v. *Currier*, 22 N. H. 287–298; *Nichols* v. *Weaver*, 7 Webb, 373; Powell on Appellate Proceedings, § 58.

*Nugent* and *McWillie*, for the defendant in error.

The power of each partner to put the name of the firm to negotiable paper is so essential to the conducting of the partnership business, that it is implied from the very existence of the firm; and stipulations among its members, restricting the right to one or more, will not affect third parties without notice. In the absence of knowledge to the contrary, they have the right to presume that the partner acting has the requisite power and authority. *Jordan* v. *Faler*, 44 Miss. 286; *Sulverstein* v. *Atkinson*, 45 Miss. 86. The English rule is, that the partnership is liable, unless the holder of the paper knows that it was made by one of the partners out of the business, and that the others did not concur. *Swan* v. *Steele*, 7 East, 210; Chitty on Bills, 29–40. It is not necessary for a person receiving a bill of exchange, indorsed by one of several partners, to apply to each of the other partners to know whether he assented to such indorsement, or, otherwise, that it should be void. *Flemming* v. *Prescott*, 3 Rich. 308.

Where a partner makes a note in the name of the partnership, it will render all the parties liable to a *bona fide* holder,

although it has no relation to the partnership business, and the other partners were wholly ignorant of the transaction, and were even intentionally defrauded by their partner. *Rich* v. *Davis*, 4 Cal. 22 ; s. c. 6 Cal. 141. And in *Long* v. *Carter*, 3 Ired. Law, 238, it was held that the firm would be bound for a bill or the indorsement of a note which the party taking had good reason to believe was authorized by the firm, notwithstanding the facts. The *bona fide* holder of such a note is undoubtedly to be protected ; and, to affect him, there must be express notice, or such gross negligence as is equivalent to notice. 6 Hill, 114 ; 4 Hill, 259 ; 2 Ala. 502 ; 20 Wend. 251 ; 14 Me. 271 ; 16 Me. 416 ; 2 Carter, 488.

There are two cases in which the transaction is considered as carrying on its face notice that it is beyond the scope of the authority or agency of a partner, and as putting upon the creditor a necessity of proving an authorization or consent by the other partners : these are, first, where the note is given for a private debt of the partner, and knowingly so received by the creditor ; and, second, where it is known to be an accommodation note, or note given as surety for a third person. Such notes are, however, binding in the hands of a *bona fide* holder for value. American Leading Cases, 454 ; 18 Wend. 466. The whole law on this subject can be referred to the well-established principle, that there is an implied undertaking, on the part of each partner, to be responsible for the honesty of all ; and, whenever an injury must result to one of two innocent parties, it should be borne by the party whose act is the cause of the injury. Chitty on Contracts, §§ 224, 224 *a.* See Edwards on Bills, 106.

Express notice is not deemed absolutely necessary to discharge the non-assenting partner : it will be sufficient if circumstances are of such a strong and pointed character as necessarily to cast a shade upon the transaction, and to put the holder upon inquiry. Story on Bills, sects. 191, 194. The circumstances of the present case are not of the kind required. The case of *Bank* v. *Cameron*, 7 Barb. 143, does not conflict with this position. There the drawer of an accepted bill held it after indorsement by the payee. He was not the legal owner to all appearances, and the facts demonstrated on the face of

the transaction, that the indorsement was a pure accommodation indorsement, or that the bill had been paid. In none of the cases cited by opposing counsel did the court·undertake to lay down any general rule whereby a party was chargeable with notice; on the contrary, each case, as to notice, must turn upon its peculiar facts. Where the proof shows that the buyer of the bill or note did not in fact have notice, it certainly would be a harsh rule to make him suffer, unless he was guilty of gross negligence in not knowing. This would be, by construction of law, to fix notice upon a party, contrary to the very truth.

*W. L. Nugent* argued the case orally.

SIMRALL, C. J., delivered the opinion of the court.

Thomas E. Helm, president of the Capitol State Bank, seeks to hold E. Bloom, a member of the commercial partnership of Bloom & Boyd, on the firm acceptance of a domestic bill of exchange for $300.

The defendant insisted that he was not liable, because the bill was not accepted on account of the partnership business, but for the credit and accommodation of the drawer, Gunn, and that the partnership name was signed by Boyd, without his knowledge or consent.

It is well-settled law, that each member of a mercantile partnership, like that of Bloom & Boyd, may enter into any transaction or contract in the firm name within the scope of the business. To draw and accept bills of exchange, to make and negotiate promissory notes, are contracts which either member may make for all, in relation to and furtherance of the business. Although the articles of agreement may deny to one member the authority to make and issue commercial paper, and confide it exclusively to another, yet that is what may be termed the internal law to the several members, which in no wise affects the public, except as it may have notice of it; for the mere formation and existence of the partnership is the communication of power to each member to transact the whole business of the firm, and to bind each member accordingly. *Winship* v. *Bank of the United States*, 5 Pet. 529; *Faler* v. *Jordan*, 44 Miss. 283.

Persons dealing with a partnership are required to look only to the character of the business in which they are engaged, to ascertain the extent of authority which is imparted to each member to deal for all. No inquiry is enjoined by the law as to their private agreement, as the source of the authority, or for its limitation. *Faler* v. *Jordan, ubi supra.*

The test as to third persons is, Does the contract fall within the line of the business? If so, then all are bound, although the contract may be forbidden by the articles, or be for the exclusive benefit of an individual member.

The name of a mercantile partnership, on commercial paper in the discount market, may be judged of as the name of an individual. The banker who buys the paper on its credit is not put on inquiry about the private agreement of the members, nor whether it was placed there for a legitimate purpose. If the paper is taken in due course of business for value, the partnership is bound, although the firm name has been used for the accommodation of the drawer, without the knowledge or consent of any except the member who thus abused the confidence of his partners.

It is true that neither member has the implied authority to sign the firm name for accommodation, or as security. But, since each acts for all as general agent, such improper use of the firm credit binds all. This results from the consideration that each reposes confidence and trust in the other. And where a wrong is perpetrated, it is just that the co-partner should suffer, rather than the innocent holder of the paper. There is also the higher consideration of preserving the credit and negotiability of paper of such universal use in commerce.

To defend successfully, the non-consenting partner must show that the holder did not take the paper in due course of business, or that he had notice that it was for the credit or accommodation of some other person. The foregoing principles are sanctioned by many cases. *Foot* v. *Sabin*, 19 Johns. 154; *Andrews* v. *Planters' Bank*, 7 S. & M. 192; *Langan* v. *Hewett*, 13 S. & M. 122; *Bank Tenn.* v. *Saffarrans*, 3 Humph. 597, 610; *Faler* v. *Jordan, ubi supra; Le Roy* v. *Johnson*, 2 Pet. 186.

Did Helm take the bill from Gunn in due course of business, or were the circumstances such as to put him on inquiry?

Or, did he know, or have reason to believe, that the acceptance was for the private benefit of Gunn? The judge to whom the case was submitted on the law and facts made separate findings. As to the facts, among other things, he found : " Helm believed, when he cashed the acceptance, that it was for Gunn's private use, and was purely an accommodation acceptance by Bloom & Boyd, and not given in furtherance of their business; but he did not know which partner signed it; thought it was *bona fide* the acceptance of the firm ; and cashed it, without suspicion of the disaffection or want of privity in fact of either partner."

The judge finds that Bloom & Boyd accepted (as Helm believed) for Gunn's accommodation, and for his private use. The law on that condition of facts is, as we have seen, that the acceptance only bound Boyd, who used the partnership name ; the further finding being " that Bloom did not authorize or consent to the acceptance ; and Gunn deceived Boyd, Bloom, and the bank."

Although Helm did not know which member signed the firm name, the law applicable to the facts is, that only that member is bound who used the name. It was his acceptance, and not that of the partnership. Helm must be held as taking the paper on the liability of Boyd alone.

But it is also assigned for error that a new trial was refused. To decide that question, we must look into the testimony.

Gunn applied to Mr. Helm, president of the bank, for a loan of $300, and proposed to give the acceptance of Bloom & Boyd. Helm knew that Bloom was good, and consented. In his own language, " I wrote out the draft, as it now appears on a Capitol State Bank blank, directing it to Bloom & Boyd, and Gunn signed it. . . '. Gunn went off with it; he soon came back with the acceptance." " I did not know which had signed it." " I did not see either Bloom or Boyd in reference to the transaction." " I did not know at the time that Gunn wanted the money for the Express Company, but I did believe that he was getting it for his own private uses, and not for the benefit of Bloom or Boyd, or their business." " I believed it to be for his uses, because of his previous conversation with me, and because the draft was drawn by him, and accepted by Bloom & Boyd, and he got the money."

The bill of exchange is as follows : —

"Jackson, Miss., June 28, 1873.

Sixty days after date, pay to the order of Thomas E. Helm, president Capitol State Bank, three hundred dollars, value received, payable at Capitol State Bank, and charge to account of, with twenty-four per cent interest after due, until paid.

"(Signed)       L. C. Gunn.

"To Bloom & Boyd, Jackson, Miss."

Across the face of the above bill were written the following words : "Bloom & Boyd."

Did the Capitol State Bank take this paper according to the ordinary course of business? The regular course would have been for Gunn to have delivered the bill to the bank, as payee, and for the bank to have presented it for acceptance.

Regularly, the drawing of the bill implies that the drawer has funds in the hands of the drawee, or some arrangement to accept, and the payee is appointed to receive the money. In the *Bank of Vergennes* v. *Cameron*, 7 Barb. 143, the draft was drawn by Peter Comstock, on Allen Comstock, Burlington, Vt., payable to the order of Baker & Cameron, a commercial firm. It was offered for discount by Peter Comstock, the drawer, who obtained the money. Remarking on the point of what the purchaser of the paper must infer, the court say, "The fact that the drawer had the draft in his hands, with the indorsement of Baker & Cameron upon it, is sufficient to charge Scott, who discounted the draft, with notice that it was mere accommodation paper." He was apprised that the name of the firm had not been indorsed in the usual course of business.

The case of *Joyce* v. *Williams*, 14 Wend. 141, is in its circumstances like this. Flagg examined a lot of hats, and agreed on the price with the clerk, and inquired whether he would take the acceptance of Denison, Williams, & Co. for the amount. He agreed to do so. The goods were turned out to Flagg, and the draft taken from Flagg, as it now is, and that it was all one transaction.

The court relieved the non-consenting partner from liability, on the ground that it was not a pre-existing security in Flagg's hands, but was for the precise amount of the debt,

and indicated that it was made for that purpose, and not for partnership account.

Gunn applied to Helm, president, for the loan of $300, and proposed to give the acceptance of Bloom & Boyd. The paper was written by Helm for that precise sum, and immediately returned to the bank, accepted, — not for any pre-existing debt to Gunn, nor for any matter connected with the partnership business. The circumstances point quite as distinctly to a personal loan to Gunn, on the credit of Bloom & Boyd, as the acceptance in the last-cited case did for the security of Flagg.

This view, in connection with the knowledge or belief of Helm as to the character and use to be made of the paper, leads to the same conclusion on the facts as that announced by the circuit judge.

But it is said by the defendant in error that the judge ought to have spread his special finding on the minutes of his court; and, not having done so, this court cannot regard it.

The statute (Code, § 650) does not declare it necessary for the judge to make separate finding of the fact and law, except in one case; viz., unless one of the parties shall request it, " with a view to except to the decision of the court on the question of law involved: " in which case " the court shall state, in writing, the conclusions of fact found, separately from the conclusion of law." Unless so requested by one of the parties, " the decision of the court on the trial of an issue may be stated generally for the plaintiff or defendant."

The statute exacts no more than that the conclusions of the judge on fact and law, when requested, shall be reduced to writing, for the single purpose of giving the litigant an opportunity of reviewing his conclusion of law in this court. That purpose must be manifested by an exception. And in that mode the conclusions are certified to this court.

The next succeeding section allows a motion for a new trial, a bill of exception to the decision thereon, and a revision, as in cases of trial by jury. This is intended to test the correctness of the ruling on that question, as in cases of jury trials.

We think it unnecessary to place the conclusions of fact on the minutes ; and that such finding by the judge may

be brought to the notice of this court by bill of exceptions.

The statute does not make them, when reduced to writing, part of the record.

The " findings " are properly before us in this record.

We have said this much in construction of the statute, but hardly think the finding is full enough to warrant a final judgment in this court.

*Judgment reversed and new trial awarded.*

Thereupon the plaintiff in error, by his counsel, moved the court in arrest of the judgment, on the opinion herein reversing the judgment of the Circuit Court and awarding a new trial, and for a final judgment in this court in his favor, on the special finding of facts in the record.

*Frank Johnston* and *J. A. Brown*, for the motion.

Under the decision in this case, the only inquiry necessary on the motion is, whether the finding of facts is complete.

We find the rule without exception, as to special verdicts or special findings of facts by the court (no distinction being made between them), that they should contain only the issuable facts of the case, should conform to the pleadings, and contain only the controverted facts; and that they should state the facts, and not the testimony. *National Bank* v. *Peck*, 8 Webb, 660; *Carlisle* v. *Mulhern*, 19 Mo. 57, 58; *Hawkes* v. *Ins. Co.*, 11 Wis. 191.

Counsel then analyzed the pleadings, showing what facts were admitted and what facts put in issue ; and analyzed the finding of facts, showing what facts were found, and contended that every fact was found which was put in issue by the pleadings. So that the admitted facts and the facts found, together constituted all the facts of the case.

On the motion for judgment in this court, *W. L. Nugent* presented an elaborate written argument, making the following points : —

1. The findings of the court should be full, and respond to all the issues tendered by the pleadings; and, unless this is done, no judgment can go here. The pleadings in the case

establish no facts. There was the general issue pleaded, with notice, under the statute, of special matter of defence. To this notice replication was filed, and the issues thereon arising were issues of fact. Nor can the special findings be aided by other parts of the bill of exceptions. The statute is an innovation upon the common law, and the party claiming any benefit under it must bring his case squarely within its letter. *Hadden* v. *Jordan*, 28 Cal. 301; 20 Cal. 132; 26 Cal. 189; 28 Cal. 418; 4 Abb. Prac. 11; *Bates* v. *Wilbur*, 10 Wis. 415; 9 Mich. 158; 3 Cal. 111; 10 Iowa, 586; 10 Ohio St. 591; 7 Wis. 214. The practice of rendering final judgments or decrees by an appellate court " is inconvenient, and open to serious objections, and therefore " should not be followed, except in very special cases. *Parson* v. *Merrick*, 5 Wis. 237.

2. When the judge tries the whole case, the proper mode of reserving questions of law is to ask the court to decide the law as counsel may desire, and, on refusal, to have it noted in the bill of exceptions. *Griswold* v. *Sharpe*, 2 Cal. 17. The parties must, in order to avail themselves of error in the court, separate the matters of law from the matters of fact, and call the attention of the court expressly to the point or matter to be decided. *Taylor* v. *Russell*, 8 Mo. 701.

3. The request in this case for a special finding of facts was made after the judgment was pronounced and entered of record, and was not accompanied with notice to the court that the plaintiff in error intended to take the case to the Supreme Court on the finding. It was, therefore, too late. *Moore* v. *Barnett*, 17 Ind. 349.

4. The plaintiff in error, after judgment was entered of record, made his motion for a new trial, which was overruled. He excepted to this judgment, and, as required by statute, incorporated all the evidence in his bill of exceptions, and the special findings of fact and law combined. He excepted to the finding of facts as well as law. The law does not warrant such a procedure. Suppose this court say the finding of facts was not correct, could they remodel it, and then give judgment ? Manifestly not.

SIMRALL, C. J., delivered the following opinion, on the motion to render judgment in this court for Bloom : —

We are all of opinion that the " conclusions of fact " intended by the statute (Code, § 650) must be as full as the special verdict of the jury, and must embrace every thing left open to evidence or not admitted by the pleadings, so that a final judgment may be pronounced.

The judge must not state the evidence adduced on either side, but the facts proved ; and these facts must be so full and complete, that, if the plaintiff is entitled to judgment, a final judgment *quod recuperet* may be entered.

A majority of the court are of opinion that the statement by the judge of his conclusions of fact does not meet the requirement of the statute, as we have explained it.

CHALMERS, J., was of opinion that the conclusions of fact were full enough under the pleadings, and that judgment final should be entered here.

CAMPBELL, J., was of opinion that, in any state of the case, upon a reversal of the judgment in a case tried by the court, it is to be dealt with as any other case at law ; that the object of requiring the court to state in writing the conclusions of fact found, separately from the conclusions of law, is to enable the appellate court to see what view was taken of the law, and what of the facts, as in trial by jury, where the court propounds the law and the jury finds the facts ; that § 651 of the Code shows this object plainly, by allowing a motion for a new trial, a bill of exceptions, and an appeal, " as in case of trial by jury : " and, therefore, he concurred in the conclusion of the Chief Justice to overrule the motion for judgment final here, and to remand the cause for a new trial.