COLUMBUS INSURANCE & BANKING CO. *v.* FIRST NATIONAL BANK ET AL.,

AND

SWEETZER, PEMBROKE & CO. *v.* FIRST NATIONAL BANK ET AL.

1. CORPORATIONS. *Usury. Repeal of charter. Code* 1857, *art.* 5, § 2, *ch.* 35, *p.* 292. *Acts* 1886, *p.* 35.

A charge of interest at the rate of ten per cent. "discount" is in violation of the statute disallowing as usurious all charges of interest in excess of ten per cent.    And under the provision of the code of 1857 declaring repealable all charters granted by act of the legislature, unless otherwise provided in such act, the right of a bank whose charter was granted while that code was in force, and contains no such provision, to charge ten per cent. "discount," under an authorization in its charter to stipulate for interest not exceeding ten per cent. "discount," was taken away by the act of March 13, 1886, repealing all provisions allowing corporations to take more than ten per cent. interest.    *Shotwell* v. *Railroad Co.*, 69 Miss., 541, cited.

2. ACCOMMODATION PAPER. *Draft payable to drawer. Notice.*

One who discounts a draft payable to the drawer, and accepted by the drawee firm within whose course of business it is to issue negotiable paper, is not affected with notice that the acceptance is for accommodation by the fact that the draft remains in the hands of the drawee.    *Bloom* v. *Helm*, 53 Miss., 21, distinguished.

3. ANTICOMMERCIAL STATUTE. *Such draft not within. Code* 1892, § 3503.

A draft payable to the order of the drawer is in effect payable to bearer, and is not within the statute (code 1892, § 3503) allowing defenses existing between the original parties to be availed of against a holder who acquired the paper in good faith, for value, before maturity.    *Bank of Winona* v. *Wofford*, 71 Miss., 711.

FROM the chancery court of Lowndes county.

HON.. T. B. GRAHAM, Chancellor.

In November, 1892, N. Gross &. Co., a firm composed of Dora Gross and J. Hirshman, made, or attempted to make, an assignment for the benefit of creditors, preferring therein the Columbus Banking & Insurance Co. for a debt of $13,833. The assignee took possession of the assets, and proceeded to administer the same in the chancery court, under chapter 8 of the code of 1892. The First National Bank of Columbus at once filed its cross petition, attacking the validity of the assignment on several grounds, and praying that the claim held by it against N. Gross & Co. be charged as a lien upon and paid out of said assets. This claim consisted of an acceptance of N. Gross & Co. of a draft on them for $3,400, drawn by F. M. Leigh & Co., payable to their own order, and by them duly indorsed and delivered to the bank. Two days after the assignment, the Columbus Banking & Insurance Co. filed its cross petition, also assailing the assignment, and praying that its claim be also made a lien upon and paid out of the assets. This petition denied the validity of the claim of the First National Bank, on the ground that the acceptance mentioned was accommodation paper accepted in the firm name by J. Hirshman without the knowledge of his partner, Mrs. Gross, and, therefore, not an obligation of the firm of N. Gross & Co. Afterwards, other creditors filed cross petitions assailing. the assignment, and also attacking the validity of the claim of the First National Bank, on the ground already stated, and also that of the Columbus Banking & Insurance Co., because a large part of it was composed of interest taken out of the notes it held, in advance, at the rate of ten per cent. per annum. The First National Bank answered, denying the invalidity of its claim, and so, also, did the Columbus Banking & Insurance Co. The latter admitted that it charged ten per cent. interest in advance, but claimed that it had the right, under its charter granted by act of the state legislature in 1867, to charge ten per cent.

taken out of the notes in advance or "ten per cent. discount off," as the authorized limit is expressed in the charter.    (Acts 1867, p. 284.)

The opinion of the court sets out the facts disclosed by the evidence.    The court below, on final hearing, held that so much of the charter of the Columbus Banking & Insurance Co. as permitted it to charge interest at the rate of "ten per cent. discount off," was repealed by the act of March 13, 1886 (Acts, p. 35), and that such charge was usurious, and disallowed the ·same.    It also held that the acceptance of N. Gross & Co., held by the First National Bank, was a valid debt of that firm, and entitled to priority of payment out of the assets in the hands of the assignee.    From the final decree so holding, this appeal was prosecuted.

*Houston & Reynolds*, for appellants.

1. The circumstances attending the transaction were sufficient to put the First National Bank on inquiry as to the consideration of the acceptance.    *Citizens' Mut. Ins. Co.* v. *Ligon*, 59 Miss., 305; 17 Am. & Eng..Enc. L., pp. 1154, 1170; Bates ·on Part., § 354; *New York Fire Ins. Co.* v. *Bennett*, 13 Am. Dec., 109; *Roth* v. *Colvin*, 32 Vt., 125; *Parker* v. *Foy*, 43 Miss., 260; *McLeod* v. *Bank*, 42 Miss., 99; *Scott* v. *Tupper et al.*, 8 Smed. & M., 290; *Mayson* v. *Beasley*, 27 Miss., 112; *Bank et al.* v. *Baugh*, 9 Smed. & M., 302; 7 Am. & Eng. Enc. L., p. 30; *Garland* v. *Jacomb*, L. R., 8 Ex., 216; 1 Lindley on Part., 329.

2. The charter of the Columbus Banking & Insurance Co., which was granted by the legislature at a time when the general law prohibited a greater rate of interest than ten per cent. per annum, provides that it might charge such rate of interest as might be mutually agreed upon by the company and the borrower, "not exceeding ten per cent. discount off."    The existence of the charter is limited to fifty years, but is no invasion of the police power of the state, and during that time

constitutes a contract between the state and the company that accepted and organized under it, that cannot be impaired by subsequent legislative action.   That it is a contract within the meaning of the prohibitory clauses of the state and federal constitutions, is clear upon authority.   8 Am. & Eng. Enc. L., p. 620; 4 *Ib.*, pp. 209, 298; *Railroad Co.* v. *Harris*, 27 Miss., 517; *Moore* v. *State*, 48 Miss., 160; *Stone* v. *Railroad Co.*, 62 Miss., 643; *Hazen* v. *Union Bank*, 1 Sneed (Tenn.), 115; Morawetz on Pri. Corp., §§ 1050, 1056, 1057; 6 Cranch, 136; 3 Wall., 51; 4 Wheat., 657; 13 Wall., 266; 94 U. S., 161; 21 Am. Rep., 401; 3 Story's Com. on Const., §§ 1371 to 1379; 21 Am. Rep., 401; *Tishomingo Savings Inst.* v. *Buchanan*, 60 Miss., 496.

*E. T. Sykes*, on the same side.

1. The facts of the transaction disclosed by the evidence were such as to put the First National Bank on inquiry as to the accommodation character of the acceptance.   And especially does that result attend the bank's knowledge that the draft came to its hands from the payees, who were likewise the drawers, with the acceptance of the drawees upon it, which was out of the usual course of business.   *Bloom* v. *Helm*, 53 Miss., 22.

2. The indorsement by F. M. Leigh, in the name of F. M. Leigh & Co., of the renewal of the Allen Motley note for $5,400, as also the drawing and indorsing by F. M. Leigh, in the firm name of F. M. Leigh & Co., of the acceptances of N. Gross & Co., of December, 1889, 1890 and 1891, respectively, were all done after the death of E. Gross, who, at the time of his death, in December, 1888, together with F. M. Leigh, constituted the firm of F. M. Leigh & Co., and were inoperative to bind the partner or the estate of the partner, who did not sign, or to convey title to the bank.   Tiedeman on Com. Paper, § 107, and notes.   If this be true, then it follows that only F. M. Leigh, of the firm of F. M. Leigh & Co., and J. Hirshman, of the firm of N. Gross & Co., are liable to the bank on

the paper. . And it also follows that the partnership creditors of N. Gross & Co. are to be first paid out of the assets of that firm, and only his interest in the surplus can be reached by the creditors of J. Hirshman. Then, as the appellant is a creditor of N. Gross & Co., and the First National Bank is a creditor of J. Hirshman simply, it results that it is entitled to priority of payment out of the firm assets. *Williams* v. *Gage*, 49 Miss., 777; *Bass* v. *Estill*, 50 Miss., 300.

: 3. The appellant, the Columbus Insurance & Banking Co., was authorized by its charter, as amended by the act of February 16, 1867, to discount notes of hand, bills of exchange, or other evidences of debt, and at such rate of interest as might be mutually agreed upon by it and the borrower, not exceeding ten per cent. discount off. Acts 1867, p. 284. This charter is in legal contemplation a contract between said appellant and the state, and the act of March 13, 1886, is, as regards the rights in question, a violation of section 10 of article 1 of the constitution of the United States prohibiting the states of the union from passing any law impairing the obligation of contracts, and also of the similar provision in all of the constitutions of the state. Const. 1832, sec. 19, art. 1; const. 1869, sec. 9, art. 1; const. 1890, sec. 16, art. 3; *Tishomingo Savings Inst.* v. *Buchanan*, 60 Miss., 496; *Com. Bank of Natchez* v. *State*, 6 Smed. & M., 599; *Payne* v. *Baldwin*, 3 Smed. & M., 661; *Hazen* v. *Union Bank*, 1 Sneed (Tenn.), 115; 1 Morse on Banks & Banking, § 6, n.; *Stone* v. *Y. & M. V. R. R. Co.*, 62 Miss., 607; *Ill. Cent. R. R. Co.* v. *Illinois*, 146 U. S., 474; *Dartmouth College* v. *Woodward*, 4 Wheat., 518; *Miss. Society of Arts*, etc. v. *Musgrove*, 44 Miss., 820.

4. It nowhere appears in the record that a greater rate of interest than ten per cent. was at any time charged N. Gross & Co. by said appellant; and, further, it is shown by the record that there was no intentional violation of the statute on usury, and that, if a greater rate than the prepayment of ten per cent. could be shown, said appellant stood ready to refund the same.

Inadvertent overcharge is not usury. *Smythe* v. *Allen*, 67 Miss., 146. There must be an intention to violate the statute on usury. *Planters' Bank* v. *Snodgrass*, 4 How., 573.

There is no evidence to sustain any attack, nor is there any attack upon the transaction for usury, except on the ground that interest on the drafts of N. Gross & Co. was charged by appellant at the rate of ten per cent. discount off, as authorized by its charter. A bank is no more exempt than an individual from the operation of the usury laws, unless expressly exempted therefrom. In the case of a mercantile discount, however, it may receive the amount of interest in advance. Discounting, or loaning money with a deduction of the interest in advance, is a part of the general business of banking, and may be done by a bank, even without specific authority conferred by its charter. Law of Corp. (Boone), § 21; 2 Am. & Eng. Enc. L., pp. 92, 93; *Bank for Savings* v. *Collector*, 3 Wall., 495; *Fleckner* v. *Bank of United States*, 8 Wheat., 338.

*William Baldwin*, for appellees.

1. It is not claimed that the First National Bank knew the accommodation character of the paper, and the evidence shows that the course of dealing between the parties was such as to indicate the contrary. Mrs. Gross has never objected to the payment of the draft drawn by her partner, Hirshman, and acquiesced in the assignment of the firm assets, in which transfer the paper is recognized as a partnership obligation. It is immaterial that the acceptance in question was given in renewal of that sold to the bank in December, 1889, for the rights of the bank are to be determined with reference to its knowledge when it took the original. 17 Am. & Eng. Enc. L., p. 1035. It was then that the bank parted with the Allen Motley note, and, in so doing, paid for the acceptance.

"To defend successfully, the nonconsenting partner must show that the holder did not take the paper in due course of business, or he had notice that it was for the credit or accom-

modation of some other person." *Bloom* v. *Helm*, 53 Miss., p. 29 *et seq.* See, also, 17 Am. & Eng. Enc. L., pp. 1021, 1033. The firm of N. Gross & Co. is shown to have been a trading partnership, and the issuance of such paper was within the scope of its business.

2. On April 9, 1889, the appellant banking company loaned N. Gross & Co. the sum of $5,577.80 of its debt involved in this proceeding, effecting the transaction by discounting their three notes for $2,000 each, all dated March 30, 1889, and falling due respectively on November 18, 1889, December 18, 1889, and January 18, 1890. Out of each of these notes appellant deducted a sum in excess of ten per cent. interest per annum, which sums (as shown by a tabulated statement) were arrived at by calculating the interest on a basis of three hundred and sixty days instead of three hundred and sixty-five days to the year. This was unwarranted, in view of the language of its charter, which did not permit a greater rate than "ten per cent. discount off"—that is to say, a discount at the rate of ten per cent. per annum, regard being paid to the meaning that the law gives to the word year. Code 1857, p. 643, arts. 1, 3.

3. This was a device to obtain usurious interest, and not an accidental overcharge. There was no proof of any custom or usage to authorize it, nor could it have been authorized by them had the same been proved. Usage and custom cannot change, nor engraft exceptions upon, the usury laws. George's Digest, p. 429, § 38; *Niagara County Bank* v. *Baker*, 15 Ohio St., 68; *New York Firemen's Insurance Co.* v. *Ely*, 2 Cowen, 707; *Dunham* v. *Gould*, 16 Johns., 367; Lawson on Customs and Usages (ed. 1881), p. 458, § 219, and cases cited. The fact that the excessive interest only amounts to a few dollars, cannot be plead in extenuation where, as in this case, it was received deliberately and advisedly.

4. The words "ten per cent. discount off" mean so much off as interest per annum, and no special privilege over other

money lenders was intended for a shorter period than one year. *Killingsworth* v. *Commercial Bank*, 9 Smed. & M., 628; *Forniquet* v. *West Feliciana Railroad Co.*, 6 How., 116. The said appellant was then, as to loans for less than one year, upon the same footing as other money lenders, and it is settled beyond controversy that taking out ten per cent. in advance is usurious under the laws of this state. *Hyde* v. *Finley*, 26 Miss., 468; *Polkinghorne* v. *Hendricks*, 61 *Ib.*, 366; *Union National Bank* v. *Frazier*, 63 *Ib.*, 231.

5. The evidence shows that the several loans in question were made by appellant to Gross & Co. at an agreed rate of interest as loans, and were in no sense of the word "discounts." 1 Morse on Banking (ed. 1888), 128, § 49.

*T. J. O'Neill*, on the same side.

1. The objection to the acceptance held by the appellee, the First National Bank, that it is accommodation paper, cannot be made by the appellant, a stranger to the transaction, while none is interposed by the debtor, N. Gross & Co. The honesty of the transaction is not questioned, and the law in force then provided, as it does now, that, as to the obligors in such an instrument, whether drawer or acceptor, "the sum therein specified shall be due by virtue thereof." Code 1880, § 1126; code 1892, § 3504. The paper in question is clearly not an ordinary accommodation acceptance. The extension of the debt on two occasions by renewed acceptances was an accommodation to the acceptors, N. Gross & Co., and redounded to the interest of Mrs. Dora Gross, the sole heir of E. Gross, more than that of anyone else, as the estate of her deceased husband in both the firm of F. M. Leigh & Co. and that of N. Gross & Co., was in her hands, as her property, and burdened only with the partnership liabilities. Under such circumstances an extension gave her opportunity to collect, settle up, and preserve the effects of her deceased husband for her own benefit. But did these facts not exist, the general rule is that ac-

commodation bills are governed by the same rules that govern other commercial paper, and no fact is shown by the appellant that can bring this acceptance within the exceptions to the general rule. 1 Parsons on Cont., p. 259.

2. The First National Bank is a *bona fide* purchaser of the said acceptance, for value, in due course of business in open market, without notice of either the alleged accommodation character of the paper or the prior equity claimed by the appellant, the Columbus Banking & Insurance Co., and said appellant, not being a party to the paper as either drawer, indorser or holder, cannot, even in a court of equity, be permitted to set up defenses which, under the law merchant and the settled law of this state, are limited to parties who are in some measure "connected with the legal title to the paper." 1 Parsons on Cont., p. 256; *Soule* v. *Shotwell & Fitts*, 52 Miss., 238; *Bank* v. *Everman*, *Ib.*, 500; *Fellows* v. *Harris*, 12 Smed. & M., 467; *Bank* v. *Lewis*, 13 Smed. & M., 226.

3. The Columbus Insurance & Banking Co. can have no higher or more potent equity than Mrs. Gross, the partner of the firm of N. Gross & Co. How would the case stand, then, were she contesting the liability on the acceptance? A partner is the agent of the firm, and a partnership is bound, even by false representations made by a member of the firm within the scope of the business, if acted upon. When one of two innocent persons must suffer by the act of a third person, he should suffer who has been, wittingly or unwittingly, the cause of the confidence reposed. The mode in which this liability is enforced is by estoppel *in pais*. The agent or partner has made a representation as to a fact essential to his power, in placing the firm name upon a bill of exchange, and, upon the faith of that acceptance, the First National Bank acts, and the principal or firm are precluded from controverting the fact so represented. *Bloom* v. *Helm*, 52 Miss., 21; Bigelow on Est. (2d ed.), p. 425.

F. M. Leigh says that the First National Bank took the ac-

ceptance without a word, "because it was in due form, signed by one good firm and accepted by another." Hirshman, the member of N. Gross & Co., who made the acceptance for his firm, with other witnesses, shows that there was nothing in the transaction that could or did suggest to the vendee bank the accommodation character of the paper, and also that said bank parted with the Allen Motley note when it took the acceptance. Under this state of facts, Mrs. Gross is clearly estopped, and so, also, must be the appellant, the Columbus Banking & Insurance Co.

COOPER, J., delivered the opinion of the court.

The appeals in these cases might have been prosecuted upon one record, and we dispose of them in one opinion.

1. The court rightly held that the account of the Columbus Insurance & Banking Company should be purged of all usurious interest, and that any interest charged by that company in excess of ten per cent. per annum was usurious. It may be conceded that, by its charter, authority was conferred upon that company to stipulate for any rate of interest not exceeding ten per cent. "discount," and that it did not reserve any greater rate than such discount, for that rate would be usurious, and the right to receive it does not now exist, notwithstanding the provisions of its charter. By an act approved March 13, 1886 (Acts, p. 35), it was, among other things, provided "that every provision of any act heretofore passed creating any corporation, or amending any act creating any corporation, which authorizes any such corporation to take or receive more than ten per centum interest per annum, or which is in conflict with section 1141 of the code of 1880, is hereby repealed." The charter of the company was granted by an act approved February 16, 1867. At that time the code of 1857 was in force in this state, and, by the last clause of article 5 of section 2 of chapter 35 (page 292), it was expressly provided that "all charters granted under this act, or by act of the legislature,

unless otherwise provided in the act, may be repealed by the legislature.'' There is no provision in the act of incorporation of the company withdrawing it from the operation of this law, and its corporate existence is held at the will of the legislature. *Shotwell* v. *Railway Co.*, 69 Miss., 541.

2. The court did not err in holding that the claim of the First National Bank was a valid charge against the firm of N. Gross & Co. The acceptance propounded was the renewal of one of the previous year, which was in turn given in renewal of the original, which was acquired by the bank in December, 1889. If N. Gross & Co. were bound by the original acceptance, they were, of course, bound by those given in renewal and extension. The question is whether, by the original, a liability was fixed upon both Hirshman, by whom the acceptance was made, and upon Mrs. Gross, his partner, or whether Hirshman alone was bound.

The acceptance was for accommodation, and, as between Leigh & Co., or one taking from them with notice of its character, was binding only on Hirshman; but, if the bank was a purchaser of the instrument in good faith—*i. e.*, for value and without notice—both partners were bound, for it is not denied that it was within the scope of the business of N. Gross & Co. to issue negotiable paper. The facts disclosed by the evidence are that the bank had discounted, for Leigh & Co., a note executed by one Motley for the sum of five thousand dollars, upon which Leigh & Co. were bound to the bank as indorsers. Motley had died before the maturity of the note, and the president of the bank had notified Mr. Leigh, of the firm of Leigh & Co., that the note must be paid or satisfactory security given for an extension, to which Mr. Leigh replied that the matter should have attention when the note should fall due. Leigh, for the purpose of arranging to discharge the Motley note, drew the bill of exchange in question upon N. Gross & Co., by which the firm of Leigh & Co. directed N. Gross & Co., twelve months after date, to pay to their (Leigh & Co.'s) own order the

sum of three thousand four hundred dollars, which was accepted by N. Gross & Co. in the usual form.    This instrument Leigh & Co. indorsed, and delivered to the bank, and Mr. Leigh gave the check of Leigh & Dashiel, the successors in business of Leigh & Co., for the difference between its value and the amount of the Motley note, in payment of the Motley note, to the bank, which note was then delivered to Leigh for Leigh & Co., as indorsers who had paid the same.

We are unable to discover anything, either on the face of the paper, the circumstances attending its negotiation or otherwise, from which to infer that the bank had notice of the character of the acceptance, or of facts which devolved on it the duty of making further inquiry.

In *Bloom* v. *Helm*, 53 Miss., 21, the circumstances of the transaction were held to have charged the purchaser of the bill with notice that the acceptance was for accommodation, and, therefore, not binding upon a nonassenting member of the accepting firm.    It was then said that possession of the bill by the drawer, after acceptance, was sufficient to charge the purchaser with notice that the acceptance was for accommodation; and this was also held in *Bank of Vergennes* v. *Cameron*, 7 Barb., 143.    And, if the maker of a note indorsed by a firm is in possession of the note, this imports that the indorsement is for accommodation, otherwise the note would not be in the maker's hands, and the nonassenting members of the indorsing firm are not bound.    *Stall* v. *Catskill Bank*, 18 Wend., 466; *Austin* v. *Vandermark*, 4 Hill, 259; *Gansevoort* v. *Williams*, 14 Wend., 133; 1 Parsons on Notes and Bills, 141; *Fannor* v. *Hall*, 1 Barr, 417.    And, where a nonresident partner drew a bill in the firm name upon himself, and accepted and discounted the bill, it was held that the duty of the taker to ascertain the authenticity of the signatures, if performed, would have discovered the facts, and that he was not a *bona fide* holder of the bill.    *Cooper* v. *McClurkan*, 22 Penn. St., 82.    So, a memo-

randum written on the back of a note has been held to be notice of the facts it recites.   *Bank* v. *McDonald*, 127 Mass., 82.

But none of these decisions are applicable to the facts of this case, for they all proceed upon the postulate that notice is given of the facts from which the accommodation character of the acceptance or indorsement should be inferred.   If Leigh & Co. had been the drawers of a bill payable to another person, the fact that they held the bill after its acceptance would show that it was for accommodation.   But they were payees as well as drawees of the bill, and as payees it was in the course of business that they should be in possession of the paper.   Bills of this sort are irregular in form, and may be treated either as bills or promissory notes (1 Dan. on Neg. Insts., 128), but are of common use both in England and this country.   *Id.*, § 130. An instrument payable to the order of the maker is in legal effect payable to bearer, and is not subject to the provisions of our statutes allowing defenses existing between original parties to be interposed against a *bona fide* holder.   *Bank of Winona* v. *Wofford*, 71 Miss., 711.

3. We concur in the conclusion reached by the chancellor that the evidence fails to support the right asserted by Sweetzer, Pembroke & Co., The Tennent-Stribbling Shoe Co., and Weinman, Hirshman & Co. to rescind the sales made by them to Gross & Co., and recover the goods sold by them because of the fraud of Hirshman in making false representations as to the financial condition of his firm.

*The decree is affirmed.*

*Houston & Reynolds*, for appellants, filed the following suggestion of error:

It is a mistake to say that there is nothing in the charter of the Columbus Insurance & Banking Co. to withdraw it from the operation of article 5 of section 2 of chapter 35 (page 292) of the code of 1857.   On the contrary, the charter contains the following provision: "That all acts and parts of acts incon-

sistent with this act be, and the same are hereby, repealed, and that this act shall take effect and be in force from and after its passage, and this act shall be in force fifty years from its passage.'' Acts 1867, p. 286. This provision, taken in connection with other parts of the act, withdraws it from the operation of the code of 1857. That code being a legislative act, and not a part of the constitution, in determining whether the charter is withdrawn from its operation, the inquiry is limited to the intent of the legislature in granting the charter. *New Jersey* v. *Yard*, 95 U. S., 111; *Louisville Gas Co.* v. *Citizens' Gas Co.*, 115 U. S., 684.

In determining this intent the act should not receive a strained construction, but should receive a fair and reasonable one. While it is a contract, and the state a party to it, it ought to be construed according to those well-established principles which regulate contracts generally, regard being had to the nature and object of the grant. *United States* v. *Gurney*, 4 Cranch, 333; *Huidekoper's Lessee* v. *Douglas*, 3 Cranch, 1.

The corporation having been created and endowed with perpetual succession, the subsequent provision in the act that the charter should be in force for fifty years, cannot have been designed to limit the corporate existence, since such a provision would have been inconsistent with perpetual life. What was meant was that the charter should be irrepealable for fifty years. It will be seen, by reference to the other acts of incorporation passed at the same session of the legislature, that whenever that body wished to create either a corporation of unlimited duration or one of limited duration subject to repeal, it never put in force an act creating a corporation of unlimited duration and then limited it afterwards.

In *Shotwell* v. *L. N. O. T. Ry. Co.*, 69 Miss., 541, it was held that these sections, which by the act containing them were declared irrepealable (the others, not being so declared, by inference were repealable), could not be repealed by subsequent legislation. This declaration can be expressed as well by the

words "shall be in force for fifty years," when, as in this instance, they are not words of limitation upon the existence of the corporation.

2. The court has apparently overlooked the fact that when the first draft was drawn by F. M. Leigh & Co. on N. Gross & Co., the first named firm had been dissolved by the death of E. Gross, and was no longer a mercantile firm. This fact was known to the First National Bank, which is chargeable too with knowledge of the law that rendered F. M. Leigh unable to transfer to it, for the purpose of taking up the Motley note, any title to the paper in question, of which paper the First National Bank, on taking the same, became merely the trustee for the real owner.

*Suggestion overruled.*