69  541
73  106
73  501

69  541
78  868

69  541
77  108

69  541
86  561

BOURBON SHOTWELL ET AL. *v.* LOUISVILLE, NEW ORLEANS &
TEXAS RAILWAY CO. ET AL.

1. LEVEE DISTRICT NO. 1.  *Act of* 1871.  *Right of creditors.  Legislative power.*

The act of 1871 (Laws, p. 37) created levee district No. 1, and §§ 8, 10 authorized the issuance of bonds, levied specific taxes per acre to be paid annually on all lands in the district, and declared the same a trust-fund for creditors, irrepealable for twelve years.  By §§ 12, 13 it was provided that land on which taxes should not be paid should be sold, and might be struck off to the levee board, which should hold them until redeemed or purchased, subject to state and county taxes.  This latter provision, as to sale, redemption, etc., was only a means to secure the taxes pledged to creditors, and (not being declared irrepealable) was, by art. 5, p. 292, code 1857, subject to legislative change.  Change as to this did not affect the right of creditors to enforce the specific charges on the lands.

2. SAME.  *Act of* 1876.  *Abolishing levee board.  Substituting other officials.*

The state had the power to abolish the levee board of district No. 1, as was done by the act of 1876 (Laws, p. 174), substituting the auditor and treasurer as the officers of the board, and making the tax-collectors, in their respective counties, collectors of the levee taxes.  This was only the substitution of certain officials for others to administer the trust.  It injured no one, and is no ground of complaint.

3. SAME.  *Lands of levee board.  Title vested in the state.  Creditors protected.*

No right of creditors was affected by abolishing the levee board, and vesting title of the lands it held under tax-sales in the state, since the lands were still held subject to their claims.  In every act of the legislature the right of creditors of the levee district to make available the security provided by the act of 1871 was carefully preserved.

4. SAME.  *Levee bonds.  Dealing with same by state regular.*

So far from being unjust, the state was generous to creditors of the levee district; for, during several years, it permitted state and county taxes to be paid in bonds of the board in redeeming or purchasing lands held by the board under tax-sales.  It was after the twelve years, during which the taxes were levied for paying the bonds, that the state ceased to do this; and then the right was preserved to use the bonds in payment of levee taxes accrued during the period for which the taxes were levied.

5. SAME. *Use of levee bonds. Gratuity. Right of creditors.*

It was a gratuity on the part of the state to receive bonds of the levee board in payment of state and county taxes in the redemption or pur- / chase of lands held by the board under tax-sale, and receding from this furnished creditors of the board no ground of complaint. .

6. TAX-TITLE. *Purchase from the state. Act of 1888. Conflicting titles.*

By a tax-sale made January 11, 1872, the levee board acquired title to the lands in controversy. This title was vested in the state by subsequent legislation, and the land was, by it, conveyed to the defendants under the act of March 2, 1888. Laws, p. 40. Complainants, purchasing from the auditor after that, acquired no title.

7. SAME. *Validity of legislation. Estoppel.*

Complainants in this case are not creditors of the levee district, and do not come under that category, but claim as purchasers. They allege a valid sale to the levee board for taxes January 11, 1872. The title thus acquired by the levee board, the court holds, was properly vested in the state by subsequent legislation, and it, in due form, conveyed the land to defendants. Complainants afterwards obtained a conveyance from the auditor, and claim under it. Claiming thus through the state, they are not in a position to question the validity of the legislation upon which its title rests.

FROM the chancery court of Coahoma county.
HON. W. R. TRIGG, Chancellor.

The large body of land in controversy, situated in Coahoma county, was, previous to the late war, owned by one Shotwell. The bill in this case was filed September 15, 1890, by his heirs (together with R. N. Miller and J. B. Chrisman, to whom they had conveyed a half-interest in the land) against the Louisville, New Orleans & Texas Railway Co., and certain persons claiming portions of the land by purchase under it. The complainants alleged that they were the real owners of the land, which they claimed under the original title, and also as purchasers of a district No. 1 levee tax-title. This tax-title, however, constituted the real basis of their claim, because they alleged that the taxes had not been paid and that the land was duly sold to said levee board Jan-

uary 11, 1872. The object of the bill was to establish their title, and to cancel, as clouds upon the same, the claim of defendants to the land based upon certain tax-sales hereinafter set forth. The title of the railway company being sustained by the court, and it being the main defendant, the others claiming under it by purchase, it is unnecessary to make any further reference to such other defendants. It is also deemed unnecessary to make any further mention of the claim of complainants as holders of the original title, since they allege a valid sale of the land to the levee board of district No. 1, January 11, 1872, and assert title thereunder as purchasers, and the court treats them as purchasers.

Claim to a certain half-section of the land is practically abandoned by the complainants in this court, and, as it was not sold for taxes at the same time as the other land or dealt with in the same manner, to prevent complication of statement, no further allusion will be made to it, and the history of the different tax-titles with reference only to the other land will be given. Such history, in brief, is as follows:

1. The land was sold, under the act of 1867, to the liquidating levee board in May, 1868, for liquidating levee taxes claimed to be due for the fiscal year ending May 1, 1868.

2. It was sold to the state, for state and county taxes claimed to be due thereon, in July, 1868.

3. A part of it seems to have been again sold to the liquidating levee board, in May, 1869, for liquidating levee taxes alleged to be due thereon for the year ending May 1, 1869.

4. A part of it was again sold to the liquidating levee board, in May, 1870, for liquidating levee taxes.

5. It was again sold to the liquidating levee board, in May, 1871, for liquidating levee taxes.

6. It was sold, July 11, 1872, to the levee board of district No. 1, under the act of 1871 (Laws, p. 37).

7. A part of the land was again sold to the liquidating levee board, in May, 1873, for liquidating levee taxes.

8. It was sold to the state, May 10, 1875, under the abatement act.

9. On the third day of October, 1881, Gwin and Hemingway, liquidating levee commissioners, by virtue of a decree of the chancery court of Hinds county in the case of *Green* v. *Gibbs*, conveyed the land, as the property of the late liquidating levee board, to the Memphis & Vicksburg Railroad Co., from which the Louisville, New Orleans & Texas Railway Co., derived title.

10. In pursuance of the act of March 14, 1884 (Laws, p. 182), the auditor of public accounts executed to the Louisville, New Orleans & Texas Railway Co. a quitclaim deed to the title of the state of Mississippi to said land. This deed did not recite the payment of any taxes.

11. On May 23, 1888, in pursuance of the act of March 2, 1888 (Laws, p. 40), W. W. Stone, auditor of public accounts, executed a deed conveying said lands to said railway company. The deed was in due form under said act, and recited that the railway company claimed title to the land by purchase under the decree in the case of *Green* v. *Gibbs*, and recited also that all taxes thereon since the date of said purchase had previously been paid, except $635.10, taxes for 1882, 1883, 1886 and 1887, then paid to the auditor.

12. On May 1, 1890, W. W. Stone, auditor, executed to complainants a deed to the land in controversy. This deed recites the sale to the levee board of district No. 1, January 11, 1872, and the payment by complainants, R. N. Miller and J. B. Chrisman, to the state, of $2,749.37, all taxes due on the land.

The defendants answered the bill, denying all the material allegations thereof as to complainants' title, and asserting title in opposition, under the above conveyances. Among other things, they averred that, under the act of 1867, there could be no valid sale of the lands after the sale to the liquidating levee board under which they claimed, and they denied that there was a valid sale of the lands to the levee

board of district No. 1, on January 11, 1872, as alleged in the bill.

It was alleged by complainants, and there was evidence tending to show, that the taxes to the liquidating levee board, and all state and county taxes for the years 1867, 1868, 1869, 1870 and 1871, had been paid before the sales above mentioned, or that redemptions were effected within the time required;'and, for these and other reasons, it was contended that all the sales prior to that of January 11, 1872, were void. In view of the opinion of the court, which maintains the defendant's title under the sale of January 11, 1872, and by implication holds the previous sales invalid, it is not deemed necessary to make any further statement in regard to such previous sales. Complainants contended that the state acquired no title under such previous sales, and that, as there was no adjudged delinquency to the state for any year prior to 1874, the lands were not of a class which could be lawfully sold under the abatement act of 1875, and therefore it was insisted that the state never did acquire title to the lands. It was urged by them that the act of 1871, which created the levee board of district No. 1, and authorized it to incur large liabilities, imposed specific taxes on the lands within the district, and provided, in effect, that not only the taxes so levied, but also the lands acquired by the board through sale for unpaid taxes, should constitute a trust-fund for the discharge of these liabilities. Therefore, it was contended that the state could not by the act of 1876 assume title to the lands so sold to the levee board in any other capacity than as trustee for the payment of creditors of the board; that to assume title in any other capacity would be to impair the obligation of the contract with creditors created by the act of 1871, and, since it could only take and hold the title as such trustee, there was no authority for the conveyance of the land by the auditor to the railroad company under the act of 1884, and none for that made under the act of 1888. It was urged that the state had no title of its own, and that these conveyances were

void; that, inasmuch as the sale to the levee board of district No. 1, of January 11, 1872, was valid, the complainants acquired a perfect title to the land by their deed from the auditor, of date May 1, 1890, the auditor being the successor of such levee board.

. Referring to the purchase by complainants of the levee board's title, the bill contains the following allegation:

"14. Complainants further charge and show to the court that, on the first day of May, 1890, pursuant to the laws of the state of Mississippi, they purchased from the auditor of public accounts the title to all of said lands held by said levee board of district No. 1, and received a deed for the same from the auditor of public accounts, conveying the title of these lands to said complainants, which deed will be read in evidence on the final hearing of this cause as exhibit E, and made a part hereof; that said complainants paid to the said auditor of public accounts, as the consideration of the said deed, the sum of $2,827, being the levee taxes for which the said lands were sold January 11, 1872, due the levee board of district No. 1, and accrued and unpaid taxes since that sale, commissions, etc., required by law to be paid to purchase said lands."

The answer denied the authority of the auditor to make the conveyance to complainants, and denied their title, but did not deny the allegation as to the payment of taxes by complainants on procuring the deed from the auditor.

Besides a prayer to establish the tax-title asserted by complainants and to cancel as a cloud the tax-title asserted by the defendants, the bill contained the following prayer:

"And complainants further pray the court that if, upon the final hearing of this case, the court should be of the opinion that the defendants, or any of them, are the owners of any of these lands, then they pray the court to refer it to a commission to state the amount due these complainants of the $2,827, interest, costs, damages, etc., due thereon, by them paid of taxes to the auditor, as aforesaid, on the lands

so found by the court to belong to the said defendants; and that the complainants be decreed to have a lien for the taxes so found due, costs, damages, etc., as paid by them on such lands, and that the said lands be ordered to be sold for the payment of the same to these complainants. But if these complainants are mistaken in their prayer for relief, then they pray for such other, further or different relief as, under the rules and practice of the chancery court, they ought to receive upon the facts established upon the hearing of this cause, and as they are in duty bound, they will ever pray," etc.

There was read on the hearing an agreement of parties, as follows: "It is further agreed that the instrument of writing hereto attached, and marked exhibit X, is a true and correct copy of all bonds issued by the district No. 1 levee board of the state of Mississippi, except as to dates and amounts, and, with such exception, it is identical with those used by complainants, in part, in the purchase of the alleged title of said levee board to the lands described in the bill of complaint herein, said purchase having been made, as alleged in said bill, on the —— day of ——, 1890."

The paper referred to in this agreement as exhibit X is a bond for $100, payable in gold coin. It recites that it is one of a series of five hundred bonds of $100 each, issued by the levee board of the state of Mississippi, district No. 1, in pursuance of an act of the legislature, approved March 17, 1871. There was evidence tending to show that there were outstanding debts against said levee board of district No. 1, evidenced by these bonds. On behalf of appellees, it was contended that these bonds, being payable in gold coin, were unauthorized by the act of 1871, and were therefore void, as was held in *Woodruff* v. *Mississippi*, 66 Miss., 298. But, as the court does not refer to these matters, it is not deemed necessary to make any further statement in relation to the same.

The land in controversy was wild and uncultivated, and

had not been occupied by any one until within less than a year before the bill was filed.

On final hearing, the court entered a decree dismissing the bill, from which complainants appeal. The above, together with the statement contained in the opinion, will indicate the questions decided by the court.

*R. N. Miller,* for appellants.

1. All taxes on the land in controversy due to the liquidating levee board were paid, and the tax-sales to that board were void. This being true, the chancery court of Hinds county, in the case of *Green* v. *Gibbs,* had no jurisdiction to deal with this land and to sell it as the property of the liquidating levee board. Complainants not being parties, are not bound by that decree.

2. The sale to the state on May 10, 1875, under the abatement act, was void, because there was no adjudged delinquency to the state for years prior to 1874. These lands were not of a class which could be sold under the abatement act. *Gamble* v. *Witty,* 55 Miss., 26; *Cochran* v. *Baker,* 60 *Ib.,* 282; *Chambers* v. *Myrick,* 61 *Ib.,* 459; *Cato* v. *Gordon,* 62 *Ib.,* 373; *Prophet* v. *Lundy,* 63 *Ib.,* 603. The land was redeemed from the sale of July, 1868.

3. The sale under the abatement act was also void, because the lands had been duly sold to the levee board of district No. 1, January 11, 1872. Laws 1871, p. 37, § 24. The sale of January 11, 1872, was valid, and the lands could not, therefore, be sold under the abatement act. *Green* v. *Gibbs,* 54 Miss., 592; *Bunch* v. *Wolerstein,* 62 Miss., 56.

4. The act of 1884, and that of 1888, contemplated only that purchasers of liquidating levee lands under the decree in the case of *Green* v. *Gibbs* should receive whatever interest the state had acquired at tax-sale to the same land. The state had no title to the lands in controversy, and, consequently, nothing passed under the conveyances of 1884 and 1888.

5. It cannot be maintained that, inasmuch as the state had the title in trust under the sale of January 11, 1872, it was competent to convey the land away by the act of 1888. This was not intended by the legislature, and, if it had been, the act of 1888 would be unconstitutional for the same reasons that the abatement act was held unconstitutional in *Green* v. *Gibbs*, *Bunch* v. *Wolerstein* and *Cochran* v. *Baker*, as to lands of levee district No. 1.

The act of March 17, 1871, establishing levee district No. 1, provides that lands sold to the board should be held as a *trust-fund* for the payment of debts of the board.

Looking to the acts of 1876 (Laws, pp. 166, 174) and to the act of 1878 (Laws, p. 241), we see that the legislature provides all along that these lands of district No. 1 shall be a trust-fund for the benefit of creditors of the board. The act of 1884 (Laws, p. 184) recognizes this continuing obligation, as do all the preceding acts. The act of 1878 (Laws, p. 241) was never repealed, and is in force now.

It never was contemplated by the legislature that, by either the act of 1884 or 1888, the auditor was to convey any land held in trust by the state. To give these acts a different construction would be judicial legislation. It would be monstrous for the state to declare, as it did by the act of 1871, that all lands sold to the levee board should be held as a trust for creditors, and then, after substituting itself as trustee, to give the land away. The state had no such power of confiscation, if it ever intended to exercise it.

6. I call attention to the fact that §§ 8 and 13, of the act of 1876 (Laws, p. 166) were void anyway. See *Dingey* v. *Paxton*, 60 Miss., 1038.

It was held in *Mayer* v. *Peebles*, 58 Miss., 628, and in *Bunch* v. *Wolerstein*, that the lands sold to the levee board could not be sold by the state for after-accruing taxes. If this could not be done, certainly the state could not by legislative enactment take lands held by the levee board and dispose of them in disregard of the trust.

*Nugent & McWillie*, on the same side.

Section 13 of the act of 1871, creating levee district No. 1, provides that when lands are sold, and the title becomes vested in the board, "the lands shall be part of said levee fund, and may be sold," etc. Section 10, of said act, declares that the charges and assessments levied shall constitute a special fund and trust for the payment of liabilities of the board. Laws 1871, p. 37.

By the act of 1876, the state had the right to substitute other officers to dispose of the levee funds and to administer the trust, so long as the rights of creditors were not impaired; but it could not, by destroying the board, leave creditors unprovided for. The state and federal constitutions denounce this species of vandalism. The act of 1871 was a contract as to all creditors of the board. No arbitrary act could be passed at war with the purpose manifested by this act.

By the act of 1884, abolishing levee district No. 1, the auditor was made the successor of the board. The lands held by it were lawfully vested in him as its successor, and he was the trustee, to dispose of them in his discretion. This he has done as to the lands in controversy, and appellants have lawfully acquired the title.

The obligation of a contract is the law which binds the parties. Any impairment of it, no matter what the degree, is within the prohibition of the constitution. The state may change the remedy, provided no substantial right is impaired. 15 Wall., 314; 1 *Ib.*, 535; 1 McCrary, 521; 10 How. (U. S.), 402; 103 U. S., 385.

In *Cochran* v. *Baker*, 60 Miss., 282, it was said that the state had no pretense of title to the lands of these levee boards. See also *Bunch* v. *Wolerstein*, 62 Miss., 56.

If the state had no title to the lands, it is quite certain that the deed from the auditor could convey none. Section 3 of the act of 1884 (Laws, p. 184), recognizes the fact that the auditor held the lands, under the act of April 11, 1876, as the successor of the levee board, and that they were held in trust

for the payment of the liabilities of the board. It is not to be presumed that the legislature intended to embrace these lands in the gift to the appellee, nor that the act of 1888 contemplated the disposition of any other title than that acquired by the state at the sale for delinquent state taxes. Nor can it be said that the state could constitute itself a trustee, and dispose of the lands, and that we must look to the legislature for relief. The legislature could not thus interfere with the levee board or the administration of the trust. If the act of 1886 be construed as contended for, the constitution of the United States must be displaced, inasmuch as the state will be held to have appropriated the lands to its own use. As well might robbery be justified. According to our view, the state and liquidating levee board did not own or claim the lands when they were sold to the levee board of district No. 1.

The recitals in the deed from the auditor to defendants, under the act of 1888, did not show that the fundamental conditions required by the act had been complied with. Without such compliance, the auditor was powerless to make a conveyance. *McCulloch* v. *Stone*, 64 Miss., 378; *Murdock* v. *Chaffe*, 67 *Ib.*, 740.

The first section of the act of 1888 makes the deed of Gwin and Hemingway *prima facie* evidence that the lands included in them were legally sold to the levee board, and that the title conveyed thereby is, to all intents and purposes, valid. This, however, is a mere presumption, and only operates in the absence of countervailing evidence. Here the proof shows conclusively that the liquidating levee board had no title. The lands were sold to the liquidating levee board of district No. 1, January 11, 1872, and could not therefore be sold to the state. Laws 1871, p. 37, § 24.

The so-called abatement sale had nothing on which to rest. *Dingey* v. *Paxton*, 60 Miss., 1038. There was no sale to the state antedating 1875. Lands held by the liquidating levee board, or that of district No. 1, could not be dis-

posed of under the abatement act. *Bunch* v. *Wolerstein*, 62 Miss., 56.

Here the land was sold to the state in July, 1868, but that title was redeemed. There is no point made in the proceedings had about the actual payment of all the taxes on the lands, except the taxes due the levee board of district No. 1. These were paid by appellants when they obtained their conveyance from the auditor, the commissions of the officer being paid at the same time. If the appellees insist that all the state and county taxes have not been paid, then their conveyance of 1888 amounts to nothing, and they are in no position to dispute our title.

Is the conveyance of 1888, by the auditor to the railroad company, *prima facie* evidence of paramount title? The deed is not made under the second section of that act, but under and in pursuance of the provisions of the seventh section. As stated before, the recitals in it do not show a compliance with the fundamental conditions required by the act.

*J. B. Chrisman, pro se,*

Filed a brief, discussing the sales of the land prior to the sale of January 11, 1872, and contending that they were illegal; but, in view of the opinion of the court, it is not deemed necessary to give this argument.

*Mayes & Harris,* for appellees.

1. Should the court hold that the district No. 1 levee tax-title is valid, and that the defendants did not get it through the abatement sale, then they claim the benefit of it through § 13 of the act of 1876, supplemented by the act of 1878. In *Dingey* v. *Paxton*, 60 Miss., 1038, this court held certain provisions of the act of 1876 to be unconstitutional, but these provisions do not touch the question here.

All question of the right of creditors being eliminated from the case, this is merely a question of the power of the state, as between itself and the levee board, which is but the

state's creature, to appropriate the board's title to itself. Certainly it could do this. The board, aside from the question of trust, of itself could not possibly occupy any adverse attitude towards the state. The board, and the act of 1871 which created it, were abolished and repealed respectively by the act of March 5, 1884. Laws, p. 184.

So, if this court concludes that the sale of 1875 did not place this levee title in the state, we submit that the above statutes did, and that the defendant acquired it by the deed of 1884, or else by that of 1888. We rely upon these as conduits for either the state's title of 1868 or the levee title of 1872, if either is valid. We do not need them both for that purpose; either, if valid, will accomplish the result claimed.

2. The deed of 1888 is assailed because it does not recite that the fundamental conditions imposed by the statute had been complied with, but the statute does not require that such recitals shall be in the deed. The court will presume that the conditions existed. If they did not exist, nothing was easier than for the plaintiffs to show it. *Corburn* v. *Crittenden,* 62 Miss., 125.

The argument cannot be maintained that the deed was made under § 7 of the act of 1888, and not under § 2, and that, therefore, § 3, making the deed *prima facie* evidence of paramount title, does not apply. Section 7 does not authorize the auditor to execute a deed under any circumstances. Section 2 alone grants such power, and this deed was executed under it.

3. The rule laid down in *Chambers* v. *Myrick*, 61 Miss., 459, does not apply where the owner who propounds an abatement act title, deraigns it through the auditor's deed of 1888. The presumption of title paramount, under the act of 1888, in favor of the auditor's deed, executed in pursuance of it, creates the presumption needed to make the conveyance *prima facie* evidence of paramount title. *Patterson* v. *Durfey*, 68 Miss., 779. See opinion on page 786.

*Frank Johnston*, on the same side.

Argued orally by *W. L. Nugent*, for appellants, and *E. Mayes* for appellees.

CAMPBELL, C. J., delivered the opinion of the court.

The title acquired by the levee board of district No. 1, by the sale for taxes on January 11, 1872, and the conveyance in pursuance thereof, was a valid one as averred by the bill and maintained by the evidence. This title was vested in the state by virtue of the thirteenth section of "An act to abolish the office of liquidating levee commissioner," etc., approved April 11, 1876. Laws, p. '166. The state had the right to abolish the levee board of district No. 1, as it did by the act for that purpose, approved April 11, 1876 (Laws, p. 174), and to substitute, as that act does, the auditor and treasurer for commissioners, secretary and treasurer of the levee board, and to substitute the collector of state and county taxes for the collector of levee district No. 1. The acts mentioned are to be construed together, as if they were one. Although the last-mentioned act was specifically to abolish the levee board and substitute other officers for those formerly existing, and continue the operations of the act of 1871, which created the levee district No. 1, for the purpose of paying the debts of said board, the first act mentioned deals with lands held then by the levee board of district No. 1, under any sale for taxes, and provides for their redemption at any time prior to November 1, 1876, and, if not redeemed, for their sale by the auditor of public accounts, at any time before January 1, 1878. An act approved February 1, 1877 (Laws, p. 22), extended the time for redemption one year; and, by an act, entitled "An act to extend certain provisions of an act, entitled 'An act to abolish the office,'" etc. (the act first named in this opinion), approved March 1, 1878 (Laws, p. 241), all the lands mentioned in said act were declared salable to any person, upon the terms named in certain sec-

tions of the act, by the officer authorized to sell, who was the
auditor of public accounts; and, when the twelve years for
which taxes were levied on lands in levee district No. 1 had
expired, the act approved March 5, 1884 (Laws, p. 184), was
passed, whereby the act of March 17, 1871, which created
the levee board of district No. 1, was repealed, the district
abolished, and the arrangement, by the act of April 11, 1876,
whereby the auditor and treasurer were substituted for the
formerly existing board of commissioners, was swept away
forever. But, by this act the auditor, who, by the former
acts mentioned, was empowered to sell the lands in district
No. 1, which were held April 11, 1876, by the board of that
district, was authorized to receive in payment for such lands
sold by him (or redeemed) the bonds and coupons of said
former levee board, to the extent of levee taxes then due and
unpaid to March 17, 1883. It is thus seen that, on March
17, 1871, the legislature created levee district No. 1, and pro-
vided for a board of commissioners, a secretary, treasurer,
engineer and collector of taxes; and the act levied taxes on
all lands embraced, and provided for their collection, and for
their sale for non-payment, and for them to be sold and con-
veyed to the treasurer of the board for its use, if not pur-
chased by some one who should bid the assessment due and
fifteen per cent. damages and costs. The right to redeem in
two years was secured. Power to sell at private sale, at a
fixed price, was given to the treasurer of the levee board,
and, if not sold by the treasurer or redeemed as provided, the
lands were to vest in the treasurer, and become a part of said
levee fund, and be sold "as said board of levee commissioners
may order." See § 13 of said act. By § 24 of the act it is
declared that state and county taxes on lands purchased by
the treasurer of the levee board were not remitted or released,
but only suspended as to collection, while the lands should
be held as assets of said board. So the board held the land
thus acquired, burdened with state and county taxes assessed
upon them when acquired or afterwards, which were to be

accounted for by said board, when the lands were purchased or redeemed.

The board of commissioners provided for was authorized to incur debts, and, specifically, to issue one million of dollars of bonds, and, for the payment of these bonds and other liabilities incurred, the charges and assessments fixed, levied and made as aforesaid by the eighth section of the act (a specific tax on every acre of land) were " constituted a special fund and trust " for such payment; and said charges and assessments were declared not to be " subject to repeal, alteration or suspension during the time for which they are fixed, levied and made as aforesaid, until all the bonds, obligations and liabilities of said board shall be first paid; " and the right was given to the holder of any bond or obligation of said board, after it was due, to apply for mandamus or appointment of special commissioners to collect the charges and assessments imposed by the act on the lands. The fund specifically pledged to creditors of the board consisted of the tax imposed on land by the act, and that was declared not subject to repeal, alteration or suspension, as against creditors. That was their security, and the collection and application of money from that source was the remedy provided for them. These taxes were levied annually for twelve years, commencing with the date of the act, March 17, 1871, and during that period they were to be available for creditors beyond the power of " repeal, alteration, or suspension," until all liabilities of the board should be discharged.

It is true that land struck off to the treasurer at a sale for taxes due the levee board, and not redeemed, was declared in § 13 to be a part of the levee fund, and subject to sale as the board should order; but this was not pledged to creditors, as were the taxes, and there was no declaration that the provision on this subject was irrepealable, and it was repealable by the legislature at pleasure, by virtue of the right of repeal of any charter, reserved to the legislature by the last sentence of art. 5, p. 292, of the code of 1857, then in force. Not only

were these lands vested in the levee board by purchase for taxes when no other person would bid the sum due, not specifically devoted to the claims of creditors, for whom a different security was provided, as seen, but they were to be held by the board, charged with state and county taxes, to be accounted for by the board, with interest, when purchased or redeemed, which renders it quite certain that creditors could not regard this provision as of value to them, as probably it was not, for there is no reason to believe that there could be realized from this source any thing beyond the levee taxes imposed. The lands were redeemable upon payment of the taxes, damages and cost, and the levee treasurer was authorized to sell, if he could get the cost, to the board, with accruing taxes, costs and ten per cent. per annum, and the board, after the time for redemption, might sell for less, but was accountable for state and county taxes.

From all this, it is apparent that the provision for vesting the lands purchased for taxes in the board was simply as a means to secure the " charges and assessments " imposed by the eighth section of the act, which constituted a " trust-fund " for creditors. That could not be impaired; but it was competent for the state to change the officials to administer the trust, and to divest the title of the lands as to the levee board and vest it in itself, in the way in which it was done by the thirteenth section of the act of April 11, 1876, cited above.

Not only was the action of the legislature in dealing with the levee board of district No. 1, and lands held by it, authorized by its power to repeal, and, of course, to modify the act of 1871, except wherein it was declared not subject to repeal or alteration, but it did no wrong to creditors by this exercise of its power. It had due regard to the rights of creditors, and provided for them in every act on the subject. It did more in that respect than it was called on to do, or, perhaps, should have done. By the act of April 11, 1876, the bonds and coupons of said levee board were made receivable

for state and county taxes for certain years from persons redeeming or purchasing these lands held for taxes in levee district No. 1; and this provision was continued by the act of February 1, 1877, already mentioned, by which the right of redemption was extended another year on the same terms; and the act of March 11, 1878, above mentioned, continued the "terms and conditions" of the act of April 11, 1876, as to the use of the bonds and coupons of levee district No. 1 in the purchase of these lands. Thus, the state surrendered its claim, and consented to the payment of state and county taxes, as well as levee taxes on these lands, in the bonds and coupons of this levee district, in the effort to induce their redemption or purchase. This was a valuable contribution by the state to the holders of such bonds or coupons, and was calculated to enhance their value greatly by an increased demand for the redemption or purchase of these lands, using them to pay state and county taxes, for which, but for this act of grace on the part of the state, money would have been required.

. It is true that, by the act of March 5, 1884, after the expiration of the twelve years of the annual taxes prescribed by the act of March 17, 1871, the levee district No. 1, and all that pertained to it, as far as could be, was abolished; but the power of the auditor, as the official and representative of the state, to sell and convey the lands which had been sold for taxes in the levee district No. 1, conferred by the former acts mentioned, was not affected, and the rights of creditors of the district were respected and preserved, by making the bonds and coupons receivable in the redemption or purchase of the lands before sold for No. 1 levee taxes, to the extent of the unpaid levee taxes. This view completely vindicates the state from the charge of disregarding the rights of creditors in its dealing with levee district No. 1 and its assets, and shows not only a scrupulously just regard for the rights of creditors, but a spirit of liberality and generosity at the expense of the state and county treasuries.

It is true that, by the thirteenth section of the act of April 11, 1876, it is declared that if the lands were neither redeemed nor purchased on the just and liberal terms offered, within the years allowed for that, the title should be vested in the state, but it was to hold them subject to the charge of all levee taxes due or to accrue, and these taxes were still a charge on the lands, binding them in the hands of the state or its donee or grantee. The suspension of levee taxes by this section meant no more than that the lands should not be sold for the levee taxes while held by the state. They were not salable by the tax-collectors while held by the levee board, and the auditor was empowered to sell them, taking bonds and coupons even for state and county taxes for certain years. There was nothing in this for creditors to complain of. No wrong was done them. Their claims were receivable in the redemption or purchase of the lands, not only to the extent of their claim on the lands, but even for state and county taxes for the years specified, which was so much given by the state to the creditors of levee district No. 1.

The vesting title in the state did no harm to creditors. The levee board was abolished, and the state assumed the management of the trust-fund for creditors, employing its officials for that purpose. As the state had the right to repeal or modify the act of March 17, 1871, except as to the charges and assessments declared by it irrepealable, it could lawfully vest title of the lands as it saw fit, being careful, as it was, to preserve fully the guaranteed rights of creditors.

The state had title to the lands embraced in this suit, acquired as stated, and conveyed its title to the defendant railway company, by deeds of the auditor, under the act entitled "An act to quiet and settle the title to certain lands," etc., approved March 2, 1888, Laws, p. 40. Having conveyed the lands, the state had no title when the conveyance was made by the auditor to the complainants, and they took nothing by that conveyance. The levee board of district No. 1, having acquired a perfect title by the sale of January 11, 1872, and

that being vested in the defendant before the purchase by complainants of the state, the defendants' title is unassailable in this proceeding.

We have demonstrated the validity and propriety of the legislation on this subject, as against all complaint by creditors; but really the complainants in this suit are not in a position to assail the legislation. They are not creditors, and do not come in that character. They claim as purchasers of the land, and as having acquired the title of the state, which rests, for its validity, on the very legislation which is so vigorously assailed by their counsel. If the state had no title, complainants acquired none. The title of the lands claimed by them was, as they show, in the levee board of district No. 1, by the sale of January 11, 1872. The only claim of complainants to this title is through the state. But if the dealing by the state, in the several acts reviewed, was unconstitutional and invalid, it had no title to convey. No distinction can be made in this respect between the act of March 5, 1884, and the others on this subject; for it is by virtue of the former laws that the title was in the state and the auditor was empowered to sell and convey these lands. All that the third section of the act of March 5, 1884, did was to preserve the receivability of bonds and coupons of levee district No. 1, in the redemption or purchase of the lands, as far as levee taxes were due on them.

*Affirmed.*