HENRY J. FORSDICK *v.* BOARD OF MISSISSIPPI LEVEE COMMIS-
SIONERS.

CONSTITUTIONAL LAW.    *Obligation of contracts.    Levee taxes.    Ten-cent
board.    Laws* 1865, *p.* 51.    *Laws* 1876, *p.* 174.

   If the legislature create a board for public improvements and levy
   a tax on land, irrevocably devoting the taxes to the satisfaction of
   the debts which the board was authorized to contract, the state
   cannot by subsequent act, after the debts are contracted, abate
   the tax or release the land from liability therefor.

   FROM the chancery court of Bolivar county.

   HON. A. H. LONGINO, chancellor.

   The board of levee commissioners, appellee, filed its bill
against Forsdick, appellant, to cancel his title to certain lands
described in the bill as a cloud upon the title of complainant,
or in the alternate to fix a charge upon the land for certain
taxes which complainant claims to be due and unpaid thereon,
which taxes, the bill charges, were originally due to the board
of levee commissioners for the counties of Bolivar, Washing-
ton, and Issaquena, a corporation created under the act of No-
vember 27, 1865.   [This board is sometimes popularly called
the "ten-cent board," because by the act creating it a tax of
ten cents per acre was levied on land.]   The complainant
charges that it is the successor in law of the board of levee
commissioners for the counties of Bolivar, Washington, and
Issaquena, and as such is the owner of the lands described in
the bill, or has a right to fix a charge thereon for the unpaid
taxes due said original board; that the lands were legally sold
under provision of the act of November 27, 1865, and struck
off to the old board; that the period of redemption expired
after the sale, and that the lands were not redeemed, and the
title of the board became absolute; that after the lands had

thus been sold to the board, and after the passage of the act of February 21, 1867, by the provisions of which the collection of state and county taxes on lands held by the said board were suspended, the lands were illegally, at divers times, sold by the tax collector of Bolivar county, and purchased by the state; and that afterwards, in the year 1888, the state conveyed the lands to one Williams, under whom the defendant deraigns title. The complainant. claims in its bill that under the act of 1865 an irrepealable contract was made with the creditors of the original board to the effect that the taxes imposed by the act should constitute a special fund and trust for the payment of the debts and liabilities of the corporation created by the ·act, and that said taxes should not be subject to repeal, alteration, or suspension until all of the bonds, debts, and liabilities of the said board should be paid and discharged. It is further averred that the original board of levee commissioners incurred large debts, and issued bonds in large amounts, for the purposes of doing the work specified in the act, and that such practice has been continued under said act and the several amendments thereto by the original board and by complainant, which, under the statutes, is the legal successor of the said former board, charged with the burden of its debts and duties, and which is now in fact the same corporation, and is now the owner of all its assets; that such bonded or floating indebtedness has never been paid, except through the process of, to use the language of the bill, "borrowing from Peter to pay Paul," and that the same now, in round numbers, amounts to about $1,150,000; that all of the revenues of the former board and its successors have been expended in the payment of interest, and salaries of officials and employes, and in the repairing of old levees, building new levees, and for lands, damages, etc., in condemnation proceedings, and in attempting to avert overflows when threatened. It is charged that none of the old indebtednees of said former board has ever been actually paid, but that the same is now existing and outstanding, but the same

has been novated, and new bonds issued from time to time, in place of the old and expiring ones.    The bill claims that, by the terms of the act of April 11, 1876, the legislature attempted to divest said board of its title to all lands theretofore acquired by it as aforesaid, and provided that, as to all such lands as should remain unsold on or before the first of January, 1878, the title should vest in the state.    This act, the bill asserts, is unconstitutional, in that it impaired the obligation of the contract entered into between the state on the one part and the levee board and its creditors on the other.

To the bill the defendant interposed a demurrer, setting up, among other grounds, that complainant is not in law the successor of the board created by the act of 1865; that the bill does not show any outstanding liabilities for which the land or fund sought to be recovered in this case could be applied; that, if any such debts exist, they are barred by the statute of limitation of six and ten years; that, if complainant ever discharged any of the debts of the original board, it did so as a mere volunteer, and cannot be subrogated to the rights of the original board; that, if there are outstanding liabilities to which the land or the taxes due thereon could be subjected, it cannot be done at the instance of complainant, but only by the existing creditors of the old board.    From a decree overruling the demurrer, defendant appeals to the supreme court.

*St. John Waddell*, for appellant.

The proposition of complainant is that it is the successor in law of the old board.    To a certain extent this is true, but whether any title in the land owned by the old board was given to the present complainant, must, in the nature of things, be determined by the construction of the act, for the purpose of finding what the legislature intended.    It will not do to say that, because the legislature had no power to divest the title of the old board, therefore, it was necessary that it should devolve title upon a new corporation.    The title of the old board had

been, or attempted to be, divested by the act of April 11, 1876. This divestiture, whether legal or illegal, was not withdrawn nor waived by the act of January 27, 1877. Whether the legislature might legally, as against the creditors of the old board, vest its title in the state, is one question. Whether it intended to invest that title in the new board, is a totally different one; and that it did not, I submit, is too clear for contention. And so it is submitted that the present complainant has no standing in court, as the successor of the old board, to challenge the validity of the act of 1876.

The act limited the issue of bonds to one million dollars, and devoted the money raised by taxation to the payment of the bonds. According to the averments of the bill, this million of dollars, and more, were issued, and the money intended to be applied to the payment of the bonds was appropriated to other purposes. How much money was derived from taxes and applied to other purposes? Was there a million dollars, or more, or less? The bill does not aver, but it does distinctly state that, whatever the amount of the fund was, it was applied by the present board, and its predecessors, illegally. It was not paid out on the bonds, as the law directed that it should be, and the very party guilty of this violation of law comes into a court of conscience and asks its aid to collect other revenues to apply to the payment of the old bonds, which, under the law, ought to have been paid out of the revenues which have been misapplied.

All of the outstanding bonds issued under the act of 1865 are long since barred by the statute of limitation of six and ten years. It will be borne in mind that the act of 1865 expired by its own limitation, so far as the tax thereby limited is involved, on the first day of March, 1879. That the title of the lands was vested in the State of Mississippi by the act of April 11, 1876. The last of the bonds which could have been issued must have borne date prior to March, 1879, nearly twenty years before the bill in this cause was filed. The bonds.

therefore in the hands of the original holders would have been barred by the ten years' statute of limitation; *a fortiori*, would they have been barred by the six years' statute. But looking at the matter in its most favorable light for the holders of the bonds, it is clear that no right of action survived the expiration of ten years from their issuance.

Complainant avers that the act of 1876 was a breach of trust by the state, if so, surely it devolved upon those having a right to go against the lands to proceed within ten years from the date of such breach, for their bonds antedated that period; or within ten years after the maturity of the bonds.

The seventh section of the act under which authority was given to issue bonds expressly provides that the bonds should not mature in less "than two nor more than ten years after the first day of January, 1866." So, by necessary implication, no bonds were authorized to be issued after January 1, 1876, and it must result that all of the bonds originally issued matured on January 1, 1876, and all right of action thereon at law was barred within six years, and all remedy in equity was barred ten years after the passage of the act of April 11, 1876.

In no event has the complainant any standing in court to attack the validity of the act of April 11, 1876. There is a virtual admission in the averments of the bill, that it is a bill filed solely upon the theory that the court will overrule and disregard its decision in the case of *Shotwell* v. *Railway Company*, 69 Miss., 541. So long as that decision is permitted to stand the complainant can secure no relief. Precisely the same objection which is made to the act of 1876 was made in that case, and the court held that the act of 1876 divesting the title of the liquidating levee board was valid. It is by the same act that the title of the old ten-cent board is divested. Unless, therefore, the court will overrule the Shotwell case complainant is without remedy. It is not a creditor—in the very nature of things it cannot be both debtor and creditor. The holders of

the old bonds have been paid.    So far as the bill avers, there is not a single one of the original bonds outstanding.    The complaint is made that the present board was required by law to pay off the old bonds, and that by some process of novation it has done so, and that thereby it has become a creditor of itself as a debtor, and as such creditor has the right to attack the validity of the act of 1876; but such complaint does not and cannot advance the appellees' cause.

*Frank Johnston*, on same side.

The contention of the levee board is that it is beyond the power of the legislature to place the titles to lands sold to said board in the state, and that the act of April 11, 1876, is unconstitutional and invalid, and that no title to the lands passed to the state.    This extraordinary contention proceeds on two erroneous theories.    One is, that the ownership of lands sold at levee tax sales was absolute in the levee board; and the other is, that the board of levee commissioners, in paying the bonds issued under the act of November 27, 1865, were subrogated to the rights of the bondholders, and thus entitled to the title and ownership of the land.

Counsel for the levee board seems to think that there was some sort of a private ownership of the lands by the levee board; that it was a matter of private right which was above the power of the legislature, and which is protected by the constitutional provision that private property cannot be taken except by due process of law, and that the lands held by the levee board were a trust fund for the bondholders of the district.

In the first place, the levee board held these lands in its public capacity as a quasi municipal corporation, created by the state and forming an integral part of the state.    It stood as a trustee in the administration of the affairs of the levee district.    Its duty was to collect the taxes and pay the same to the bondholders and other creditors of the district; it was to

buy in delinquent tax lands at levee tax sales, in default of bidders, and to permit said lands to be redeemed, or to sell the same for all accrued taxes, and to apply the levee taxes to the debts of the levee district in the manner directed by the statute, and, after the period of exemption, to sell said lands. The trust in favor of the creditors was declared by section ten of the act of November 27, 1865, which provided that the taxes levied and assessed by the act should constitute "a special fund and trust" for the payment of the bonds, primarily, or for any money borrowed for levee purposes, and, secondly, for any other liabilities of the levee board. The taxes were charged as a lien on the lands, both before and after a tax sale. Taxes collected in the ordinary manner, when collected, were made a trust fund for the creditors; and so, when the taxes were collected in the price paid for the lands sold by the board, the taxes thus collected constituted, likewise, a special trust fund for the creditors of the levee district. But it is clear, beyond any controversy, that the lands held by the levee board were not a trust fund for the creditors of the district. So that lands held by this levee board, under purchases at tax sales, were not a trust fund, but the taxes levied and assessed by the act of November 27, 1865, alone constituted a trust fund for the creditors of the board.

*Sillers, Jones & Owen,* for appellee.

Under the provisions of the act of 1865 all lands conveyed to the board, and which were not redeemed within two years, became the absolute property of the board when the deeds were placed on record, pursuant to the act mentioned. The bill shows that the levee board owed, at the time of the commencement of this suit, one million one hundred and fifty thousand dollars, and it is obvious that, sooner or later, the taxpayers will be forced to pay this amount, and that the greater the assets of the board the smaller will be the individual taxes imposed. In the brief of the appellant con-

siderable space is devoted in attempts to show that the levee board diverted the funds pledged to the payment of its bonds, but we have vainly searched to discover any connection between this argument and the points at issue. Suppose we admit for the moment that the revenues were not applied as the law directed, how does this aid appellant? If the bonds are still outstanding (although novated as alleged) could the lien on lands held by appellant be extinguished by the fraud of the appellee? Certainly not. The averments of the bill are that by virtue of the sale to the levee board the lands became the absolute property of the board, or that the board is entitled to a lien upon the property for the unpaid levee taxes. No levee taxes on the lands claimed by appellant ever came into the hands of the levee board, and the appellant has no concern with the question as to what became of the levee taxes paid by other people.

But let us inquire as to the nature of this fund created for the payment of the bonds, and whether it is a fact that if the levee board was entirely out of debt then the board would have no claim to the lands in controversy. Section ten, act November 27, 1865, provides that the taxes "are hereby constituted a special fund and trust to be used for the payment of bonds and any other debts of the board." An express lien in favor of creditors is what is meant by the words "special trust and fund." The property pledged in an ordinary trust deed is nothing more than a special trust, and the fund arising from a sale thereunder is simply a trust fund, the equitable title remaining in the grantor. A third party could not defend as against the grantor on the ground of a breach of the deed in trust; that is a matter with which he has no concern, and if this be true, of what concern to appellant is it whether the debts of the board are still outstanding, or whether they have been paid and extinguished, or barred by limitations? The sale to the board vested the title in the board, subject to the lien of the bondholders.

Again, the man who performed his duty and paid the levee

tax has a direct interest in the lands of his delinquent neighbor, who failed to bear his just proportion of the burden of keeping up the levees, by which the Delta counties were protected from annual overflows; the greater the assets of the board the lighter the burden upon the taxpayer.

Up to this time the lands in suit have never contributed a single dollar to the levee board. The man who has paid his taxes has a right to demand that they be subjected to the payment of the tax, and that the sale provided for in the act of 1865 be upheld.

We have endeavored to show that the levee board is, by virtue of the sale made to it, for the ten-cent levee taxes, of the lands described in the bill, the owner of all such lands, but if the court does not concur with us in this opinion, we have certainly shown a lien in favor of the levee board on these lands for all taxes imposed for levee purposes.

Under section four of the acts of November 27, 1865, a tax of ten cents per acre was imposed on all lands in the levee district, composed of Bolivar, Washington and Issaquena counties, except lands held by the state, in trust or otherwise, Chickasaw school land, and other school lands. And it is provided in said act that the tax shall continue for twelve years, and shall be payable on or before the first day of March in each and every year from March 1, 1867, to the first day of March, 1879, inclusive.

Section ten of the said act of November 27, 1865, constitutes the fund a special fund to be used, first, in payment of bonds; second, in payment of any other debts and liabilities of the board. It further provides that the taxes so levied and assessed shall not be subject to repeal, alteration or suspension during the term for which they are levied and assessed, until all bonds, liabilities and obligations of said board shall be paid and discharged.

By section fourteen of said act it is provided that the tax therein levied or assessed should be a lien, until paid, on all the cotton and lands situated in the counties named in the act.

Argued orally by *Fontaine Jones*, for appellee.

WHITFIELD, J., delivered the opinion of the court.

If it should be conceded that under the case of *Shotwell* v. *Railway Co.*, 69 Miss., 541, the ten-cent board did not get the title to the lands involved in this suit, nor any other right than the right to charge the levee taxes against the lands, it is certain that both under that case and the Woodruff case [not yet officially reported, but to be found in 25 South. Rep., 483], the purchaser of such lands from the state was bound to pay the levee taxes due that board, and that the lands· are not discharged therefrom, unless the claim is barred by the statute of limitations. But the allegations of the bill on this point are such that it was not demurrable. The demurrer is a general one and was properly overruled. The case made by the bill calls for an answer.

*Affirmed with leave to file answer in sixty days from the filing of the mandate in the court below.*